KROEHNKE, RESPONDENT, *v.* GOLD CREEK MINING CO., APPELLANT.

(No. 7,432.)

(Submitted September 24, 1935. Decided October 30, 1935.)

[51 Pac. (2d) 640.]

*Mr. William Meyer* and *Mr. S. P. Wilson,* for Appellant, submitted an original and a reply brief; *Mr. Wilson* argued the cause orally.

*Mr. H. L. Maury* and *Mr. A. G. Shone,* for Respondent, submitted a brief; *Mr. Shone* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an appeal from an order of the district court of Silver Bow county denying defendant's motion for change of place of trial. The motion, as originally made, contained three grounds, but on this appeal the defendant only argues one, namely, that the convenience of its witnesses and the ends of justice would be promoted by the change.

Plaintiff brought this action to recover the sum of $2,037.22 for money paid at the special instance and request and for the use and benefit of the defendant, and for services alleged to have been rendered between the first day of January, 1930, and the first day of October, 1933, alleged to be reasonably worth the sum of $23,500. Her allegations as to the services performed by her, in the language of the complaint, are as follows: "Services for the defendant in procuring loans of money to the defendant, in procuring purchasers of the capital stock in the treasury of the defendant; in doing clerical and secretarial work and bookkeeping and auditing and negotiating extensions of time on options to the defendant to buy land, and in preparing and filing reports, in taking care of correspondence of the

defendant, in procuring contracts for the defendant, in negotiating for buyers of the defendant's properties and at times managing the defendant company, for all of which the defendant agreed to pay the plaintiff a reasonable value and price for the said services."

The defendant denied all of the allegations as to the advancement of money and the performance of services rendered, if any, by the plaintiff at its instance and request, and later, by amendment after the case was at issue, pleaded a counterclaim seeking to recover from the plaintiff the sum of $87,551.75, being funds alleged to have been entrusted to the plaintiff and by her used for purposes other than those for which they were received, amounting in effect to the misappropriation of the funds. By subsequent amendment, other defenses in the nature of estoppel and the statute of limitations were incorporated in the answer. All of the affirmative defenses were denied by reply.

The motion for change of place of trial was made after the case was at issue and was therefore timely, as motions of this character and on this ground can only be made and heard after the defendant has answered. (*Enos* v. *American Surety Co.*, 95 Mont. 588, 28 Pac. (2d) 197, and cases there cited.)

It is well settled that the determination of a motion for a change of venue grounded on the convenience of witnesses rests largely in the discretion of the trial court; and where a change of venue is denied on conflicting affidavits, or where the showing of the movant is insufficient, the ruling of the trial court will not be disturbed on appeal. (*Dawson* v. *Dawson*, 92 Mont. 46, 10 Pac. (2d) 381, 383.) In the *Dawson Case* this court said: "In order to show the materiality of the testimony to be given by the witnesses, the affidavits should set forth that which it is expected to prove by each of them so that the court may determine its competency and materiality. The affidavit must show the cause by a statement of the facts, and the court must arrive at a conclusion from the facts stated, and not from the conclusions of a witness. (*Kennon* v. *Gilmer*, supra [5 Mont. 257, 5 Pac. 847, 51 Am. Rep. 45]; *State* v. *Spotted Hawk*,

22 Mont. 33, 55 Pac. 1026; *Cook* v. *Pendergast,* supra [61 Cal. 72].) The affidavit must show that the witnesses are material and necessary to support the contention of the moving party, and in order to make such showing a statement should be made as to the testimony expected to be proved by each of them, so that the trial judge may be in position to make determination as to whether the convenience of witnesses and the ends of justice will be promoted by such change. (*Ennis-Brown Co.* v. *Long,* 7 Cal. App. 313, 94 Pac. 250.)''

Defendant in support of its motion filed an affidavit by C. A. Jillson, its secretary, naming twenty-three witnesses, all of whom, except two, reside in Powell county, to which county it was sought by this motion to change the place of trial. It appears from the affidavit that, as to those residing in Powell county, many of them reside in Deer Lodge, its county seat; others reside at various distances therefrom; it further appears from the affidavit that all of them, in order to reach Butte, the county seat of Silver Bow county, will necessarily travel forty miles according to defendant's affidavit, and thirty-six miles according to plaintiff's counter-affidavit. Many of the witnesses will necessarily travel greater distances. Two of the witnesses, officers of the corporation, are nonresidents of the state, and it is alleged in the affidavit that they will be convenienced by the change in place of trial. It also appears from the record that although the defendant corporation had its principal office and place of business in Butte at the time of the commencement of the action, later, and prior to the filing of this motion, that was changed to Deer Lodge in Powell county, and that all of the books and records of the corporation are now located there which it will be necessary to produce at the trial.

It is set forth in the affidavit that five of the witnesses enumerated therein are placer miners of many years' experience and understand thoroughly the process of panning and prospecting ground to ascertain its worth as placer-bearing ground. It is averred that one of the extensive items of recovery in plaintiff's complaint is the claim that she prospected defend-

ant's mining ground and panned the same to ascertain its worth. It is stated that these witnesses will testify that the plaintiff was physically incapable of performing the arduous labors involved in performing this work. It does not appear from the affidavit that these experts have any personal knowledge relative to the issues raised by the pleadings.

The rule is that the convenience of expert witnesses will not be considered on an application for change of place of trial. (67 C. J. 162; *Security Investment Co.* v. *Gifford,* 179 Cal. 277, 176 Pac. 444.) Furthermore, there is no allegation in the complaint warranting the admission of any testimony in support of any claim for this service.

It is alleged that two of the officers who are nonresidents, and ▪ one of the officers who is a resident, will be convenienced by the change of the place of trial. It is generally held that the convenience of nonresident witnesses, and the convenience of officers and employees of a party, will not be considered on a motion based on the ground of the convenience of witnesses. (67 C. J. 161; *State ex rel. Nash* v. *Superior Court,* 82 Wash. 614, 144 Pac. 898; *Security Investment Co.* v. *Gifford,* supra.) We do not desire to be understood as saying that in no case would we consider the convenience of employees and officers; but in cases of this character where the distance is no greater than is here involved, their convenience will not be considered in accordance with the general rule.

It is averred that G. A. Kelly and Daniel B. Hertz, Jr., are, ▪ respectively, the clerk of the district court and clerk and recorder of Powell county; that Kelly will produce and identify various records in his office showing the participation by plaintiff in certain litigation as the representative of a corporation other than the defendant during the period of time in question; and that the recorder will produce records in his custody, showing the transactions of the same company in which plaintiff participated as its officer and managing agent. The affidavit does not disclose that either of these witnesses can testify other than in their official capacity, although it was said in the argu-

ment that it will be necessary to have them identify the documents. It is also stated in the affidavit in support of the motion that great expense will be incurred in the preparation and use of certified copies, if that becomes necessary; it is, however, not indicated what the extent and nature of the documents are so as to enable us in determining their materiality to the issues. However, by the provisions of section 10598, Revised Codes 1921, certified copies of all records and files in the clerk and recorder's office, together with the certificate of acknowledgment or proof may be read in evidence, as well as the original records, provided in the case of filed documents their execution is proved or acknowledged. (*Angell* v. *Lewistown State Bank*, 72 Mont. 345, 232 Pac. 90.). As to those recorded, acknowledgment or proof of execution is prerequisite to their being recorded. Judicial records of this state may be proved by the production of the original or by copies thereof certified by the clerk or other person having the legal custody thereof. (Sec. 10555, Id.) In cases where the inspection of the original record is shown to be essential to the just determination of the cause or proceeding pending, the record of the conveyance of real property or any other record a transcript of which is admissible in evidence, may on the order of the court or judge be removed from the office in which it is kept, for use as evidence. (Sec. 10597, Id.) We are unable to see wherein documents reposing in these offices or their record can be better identified by the custodian testifying in person than where a certified copy is resorted to, in view of the various statutory provisions reviewed, supra.

It is alleged in the affidavit that the three members of the board of county commissioners will be necessary witnesses to testify that during the period of time involved certain negotiations with reference to the building of a road which plaintiff claims she conducted with them, to be used by the defendant corporation in the development of its property, wherein she stated she was representing a corporation other than the defendant and that in what she did she was acting in that capacity.

It will be observed in the quotation from the complaint, supra, containing all of the allegations with reference to the services claimed to have been performed, that nowhere is there any mention of any services of the character just referred to, unless it be included in the allegation "managing the defendant company." Plaintiff has averred many classes of services which she has rendered, and although the general allegation, in the absence of the many specific ones, would perhaps be sufficient to admit proof with reference to these negotiations, plaintiff by alleging the specific instances has narrowed the general allegation, and the former will control the latter (*First National Bank of New Castle* v. *Grow,* 57 Mont. 376, 188 Pac. 907), and this general allegation can only refer to just what is there alleged, namely, managing the defendant corporation. "Managing" means "to control and direct; to conduct, guide, administer." (Webster's Dictionary.) Testimony by plaintiff or on her behalf under the allegations of her complaint would be inadmissible on the trial as to negotiations with the county commissioners relative to the road in the absence of appropriate allegation under the complaint in question, and accordingly, her testimony being immaterial, the testimony of the three commissioners on the same point would be unnecessary.

It is further alleged that one Newton Cleaveland will testify that at the time one M. L. Requa visited the property of the defendant in company with the plaintiff, and who, plaintiff asserts, was a prospective purchaser, that he (Cleaveland) personally told the plaintiff that his company then held the property under lease and that the same was not for sale, nor was any interest in it for sale to Requa or anyone else. Plaintiff has alleged that among the services she rendered were negotiations with various persons in an effort to sell defendant's property. We are unable to see wherein the testimony of Cleaveland would enable defendant to defeat recovery for the services, standing alone, or with any other facts which are contained in the affidavit. Assuming the property was leased, as is indicated by the statement contained in the affidavit, that would not necessarily

prevent a sale of the property. It might have a discouraging effect on a proposed sale if a purchaser desired to secure the property to operate himself. A lease implies a rent or royalty, and persons frequently are interested in owning property which produces returns as rents or royalty. It does not appear from the affidavit that Cleaveland was an officer or agent of the defendant company. The implication from the affidavit is otherwise, and since it is stated therein that the property was leased to Cleaveland's company, it being owned by the defendant, it would indicate in all probability that Cleaveland was a representative of the lessee company. True, this testimony might be admissible, but in any event it would only be cumulative to much other testimony which would be necessary to defeat a recovery if plaintiff is able to prove a prima facie case with reference to the particular service.

Lastly, it is alleged that the defendant, and plaintiff as well, desires to introduce certain of the records of Larabie Bros. Bankers, Inc., an insolvent banking institution in the course of liquidation, which records are in the custody of one Hollinsworth as liquidating officer. The books and records mentioned as being in that officer's possession and which are desired for use on the trial are the ledger sheets of the defendant company and like documents with reference to the Mining Securities Company, and also the records of deposits of both corporations. True, the custodian cannot be compelled against his will, in obedience to a subpoena to attend the district court in Silver Bow county, as he resides more than thirty miles from Butte, and Deer Lodge, his place of residence, is in a different county. (Sec. 10622, Rev. Codes 1921.) If this witness is unwilling to attend in person, his testimony may be secured by deposition. We appreciate that the trial of cases by deposition is an unsatisfactory method of presenting testimony in many instances, particularly where the testimony is sought to be produced of any eye-witness to or participant in some transaction which is in issue. It is not revealed by the affidavit that the witness in question has any more knowledge relative to the issues here

before the court than would be possessed by any other liquidating officer. In the light of the showing here made, his testimony can go no further than to identify and produce documents and supplement this by his testimony as to their custody and possession. Accordingly, this class of testimony is not of the same degree of importance as would be the testimony of an eye-witness to or participant in a given transaction. As we have observed, supra, it is only when the trial court has abused its discretion that we may reverse an order denying a motion for change of place of trial. Therefore, in view of the character of the testimony which the custodian will be able to give, we are unable to say as a matter of law that the court has abused its discretion.

As to the other witnesses, we have demonstrated that owing to the nature of their testimony or its immateriality or the connection of the witnesses with the defendant, their convenience is not such as to invoke the discretion of the trial court, and accordingly the order appealed from is affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.